Kristin L. Martin, SBN 206528
Kimberley C. Weber, SBN 302894
McCRACKEN, STEMERMAN & HOLSBERRY, LLP
595 Market Street, Suite 800
San Francisco, CA 94105
Telephone: 415-597-7200
Fax: 415-597-7201
E-mail: klm@msh.law
        kweber@msh.law

*Attorneys for UNITE HERE Local 11*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOST INTERNATIONAL, INC., <br><br> Petitioner, <br> vs. <br><br> UNITE HERE Local 11, <br><br> Respondent. | Case No.: 19-cv-1568 <br><br> [Assigned For All Purposes to Honorable Magistrate Judge Suzanne H. Segal] <br><br> **RESPONDENT-COUNTERCLAIMANT UNITE HERE LOCAL 11'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD AND IN OPPOSITION TO PETITIONER HOST INTERNATIONAL, INC.'S MOTION TO VACATE** |
| UNITE HERE Local 11, <br><br> Counterclaimant, <br> vs. <br><br> HOST INTERNATIONAL, INC., <br><br> Counterdefendant. | Date:     April 23, 2019 <br> Time:     10:00 a.m. <br> Dept.:    Courtroom 590 <br><br> Petition Filed: March 4, 2019 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

Introduction ...................................................................................................1

Statement Of Undisputed Facts ...................................................................1

Argument.......................................................................................................2

A.   Local 11 and Host stipulated to give the Arbitrator unlimited authority to decide what issues he would address. ...................................................................................4

B.   The Section 2.10 violation: Host's failure to deduct dues as authorized. ...........6

C.   The Section 2.7 violation: Host's failure to provide employees with union cards. ...................................................................................6

1.   The Award is lawful.........................................................................7

a.   Section 302 of the Labor Management Relations Act. ...................................7

b.   The Award does not violate the National Labor Relations Act or §§ 221 and 224 of the California Labor Code. ........................................................................9

2.   The Award draws its essence from the Collective Bargaining Agreement....10

a.   The Arbitrator interpreted Article 2. ..........................................................10

b.   The Collective Bargaining Agreement does not specify which party bears the burden of proof so it was the Arbitrator's job to decide. ..............................11

c.   The Arbitrator had discretion to remedy the violation he found by prohibiting Host from recouping money from employees..................................13

D.   Host may not relitigate the facts underlying the Arbitrator's Award in this Court. ........................................................................14

Conclusion ..................................................................................................15

i

1
2

# **<u>TABLE OF AUTHORITIES</u>**

3

**Cases**                                                             **Page(s)**

4
5
*Associated Orchestra Leaders v. Philadelphia Musical Society, etc.*,
    203 F.Supp. 755 (E.D. Pa. 1962) ................................................................ 8

6
7
*Association of Western Pulp & Paper Workers v. Rexam Graphic, Inc.*,
    221 F.3d 1085 (9th Cir. 2000) ......................................................... 10, 14

8
9
*Communications Workers of Am. v. GTEL Corp.*,
    1994 U.S. App. LEXIS 14679 (9th Cir. 1995) ....................................... 5

10
11
*Desert Palace, Inc. v. Local Joint Executive Board of Las Vegas*,
    679 F.2d 789 (9th Cir. 1982) ................................................................. 13

12
13
*El Dorado Tech. SVC., Inc. v. Union General de Trabajadores de Puerto Rico*,
    961 F.2d 317 (1st Cir. 1992) ................................................................ 15

14
15
*Goodall-Sanford, Inc. v. United Textile Workers Local 1802*,
    353 U.S. 550 (1957) ................................................................................ 3

16
17
*Hawaii Teamsters & Allied Workers Union, Local 996 v. United Parcel Svc.*,
    241 F.3d 1177 (9th Cir. 2001) ............................................................. 11

18
19
*Humility of Mary Health Partners v. Teamsters Local 377*,
    296 F.Supp.2d 840 (N.D. Ohio 2003) .................................................. 7

20
21
*IATSE Local 720 v. InSync Show Productions, Inc.*,
    801 F.3d 1033 (9th Cir. 2015) ............................................................... 3

22
23
*International Association of Machinists District Ten v. Allen*,
    904 F.3d 490 (7th Cir. 2018) ................................................................. 9

24
25
*Jackson Purchase Rural Elec. Coop. Assoc. v. Int'l Bhd. of Elec. Workers*,
    646 F.2d 264 (6th Cir. 1981) ................................................................. 8

26
*Major League Baseball Players Assn. v. Garvey*,
    532 U.S. 504 (2001) ...................................................................... 11, 15

27
28
*Matthews v. Nat'l Football League Mgmt. Council*,
    688 F.3d 1107 (9th Cir. 2012) ............................................................... 3

ii

*Monroe Lodge No. 770 v. Litton Business Systems, Inc.*
  334 F.Supp. 310 (W.D. Va. 1971) ......................................................... 8

*Seapak v. National Maritime Union,*
  300 F. Supp. 1197 (N.D. Ga. 1969), *aff'd* 423 F.2d 1229 (5th Cir. 1970), *aff'd*
  400 U.S. 985 (1971)............................................................................. 9

*Sheet Metal Workers Int'l Assn. Local 359 v. Madison Industries, Inc. of Arizona,*
  84 F.3d 1186 (9th Cir. 1996) ........................................................... 3, 4

*Stead Motors v. Automotive Machinists Lodge,*
  886 F.2d 1200 (9th Cir. 1989) (en banc) .............................. 3, 5, 13, 15

*Steelworkers v. American Mfg. Co.,*
  363 U.S. 564 (1960)............................................................................. 4

*Steelworkers v. Enterprise Wheel & Car Corp.,*
  363 U.S. 593 (1960)................................................................ 3, 10, 14

*Steelworkers v. United States Gypsum Co.,*
  492 F.2d 713 (5th Cir. 1971) ......................................................... 7, 14

*UFCW Local 99 v. Bennett,*
  934 F.Supp.2d 1167 (D. Ariz. 2013) ................................................... 9

*United Paperworkers Int'l Union v. Misco, Inc.,*
  484 U.S. 29 (1987)......................................................................... 3, 15

*United Steelworkers of America v. Smoke-Craft,*
  652 F.2d 1356 (9th Cir. 1981) ........................................................... 10

*Washington Post v. Washington-Baltimore Newspaper Guild,*
  787 F.2d 604 (D.C. Cir. 1986).......................................................... 7, 8

**Statutes**

29 U.S.C. § 186...................................................................................7-9

29 U.S.C. § 186(a), (b) ........................................................................... 7

29 U.S.C. § 186(c)(2)............................................................................. 7

29 U.S.C. § 186(c)(4)............................................................................. 7

iii

California Labor Code §§ 221 and 224 ........................................................... 9

9 U.S.C. §§ 9-11 ................................................................................................ 3

29 U.S.C. § 185 ............................................................................................ 2, 3

**Other Authorities**

Ninth Circuit Rule 36-3 ................................................................................... 5

### Introduction

This case requires the Court to decide whether to confirm or vacate a labor arbitration award.  Petitioner Host International, Inc. ("Host") filed a petition and motion to vacate the award, and in response Respondent UNITE HERE Local 11 ("Local 11") filed a counterclaim and motion for confirmation of the award.  Both motions present the same legal issues: whether the award is lawful and draws its essence from the parties' collective bargaining agreement, and whether the parties gave the Arbitrator authority to interpret their collective bargaining agreement and award a remedy for the violations he found.  Accordingly, Local 11's arguments against vacating the award and in favor of confirming it are the same.  Instead of burdening the Court with two separate briefs – one in opposition to Host's motion to vacate and one in support of Local 11's motion to confirm – containing identical arguments, Local 11 is filing a single brief at this stage.

### Statement Of Undisputed Facts

Local 11 and Host are parties to a collective-bargaining agreement (the "Collective Bargaining Agreement") that applies to Host's employees at Los Angeles International Airport.  Host's Petition to Vacate, ¶ 6 & Exh. B [ECF Doc. No. 1] ("Petition"); UNITE HERE Local 11's Answer & Counterclaim, ¶ 6 [ECF Doc. No. 12] ("Answer & Counterclaim").  Article 2 of the Collective Bargaining Agreement requires Host to assist Local 11 in collecting union dues in two ways that are relevant here.  First, Section 2.7 requires Host to "provide, assist in the completion of, and remit any forms necessary to perfect membership in the Union."  Second, Section 2.10 requires Host to deduct Union initiation fees and monthly dues from the wages of employees who authorize Host to do so on forms supplied by Local 11.  Section 2.12 also provides that Host will be liable to Local 11 for union dues and fees if Host fails to make the deductions required by Article 2.  Petition, ¶ 7 & Exh. B, at 35; Answer & Counterclaim, ¶ 7.

The Collective Bargaining Agreement has a grievance process that culminates in

1

arbitration.  Petition, ¶ 10 & Exh. B, at 49-51; Answer & Counterclaim, ¶ 10.  In March 2017, Local 11 filed a grievance about Host's compliance with Article 2.  Petition, ¶ 13; Answer & Counterclaim, ¶ 13.  In February 2018, Host and Local 11 began arbitrating that dispute before Arbitrator Guy Prihar (the "Arbitrator") whom Host had suggested serve the arbitrator.  Petition, ¶ 14; Answer & Counterclaim, ¶¶ 14, 31-32; Martin Dec., ¶ 6.  Five days of hearing were held, at which Host and Local 11 each were represented by counsel and presented evidence.  Answer & Counterclaim, ¶ 32; Martin Dec., ¶ 7.  On the first day of hearing, Host and Local 11 stipulated to allow the Arbitrator to frame the issues for his decision.  Answer & Counterclaim, ¶ 33; Martin Dec., ¶ 8.  When the hearing concluded, Host and Local 11 each submitted a brief to the Arbitrator.  Answer & Counterclaim, ¶¶ 34-35; Martin Dec., ¶ 9-10.  In their briefs, Host and Local 11 each addressed whether Host had violated Section 2.7 by failing to provide union cards to employees.  Answer & Counterclaim, ¶¶ 34-35 & Exh. C, at 32-34, Exh. D, at 87-88; Martin Dec., ¶¶ 9-10 & Exh. 2, at 36-38, Exh 3, at 91-92.

On December 6, 2018, the Arbitrator issued an award (the "Award") in which he found that Host violated the Collective Bargaining Agreement in connection with deduction of monthly dues and fees.  Petition, ¶ 16 & Exh. A, at 27; Answer & Counterclaim, ¶ 16.  As a remedy, the Arbitrator ordered Host to cease and desist and to pay Local 11 for dues not deducted from some employees' paychecks and provided detailed instructions about the employees and time-periods covered by the Award.  Petition, ¶ 16 & Exh. A, at 27-29; Answer & Counterclaim, ¶ 16.  The Arbitrator gave Host forty-five days (or until January 20, 2019) to comply with the Award.  Petition, ¶ 16 & Exh. A, at 29; Answer & Counterclaim, ¶ 16.  Host has not done so, and has made clear that it does not intend to do so unless compelled by the Court.  Answer & Counterclaim, ¶¶ 41-43, 47 & Exhs. E-G; Martin Dec., ¶¶ 13-14.

## Argument

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, gives

federal courts jurisdiction to confirm or vacate an arbitration award issued pursuant to a labor contract.[1] *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 595-96 (1960); *Sheet Metal Workers Int'l Assn. Local 359 v. Madison Industries, Inc. of Arizona*, 84 F.3d 1186, 1190 (9th Cir. 1996).  But it does not authorize the parties to relitigate the case before the Court.  "[J]udicial review of an arbitration award is both limited and highly deferential." *Id.*; *see also Stead Motors v. Automotive Machinists Lodge*, 886 F.2d 1200, 1205 (9th Cir. 1989) (en banc) (describing the "nearly unparalleled degree of deference" given to labor arbitrators' decisions).  This standard of review guides our arguments to this Court.

This brief's argument is organized as follows.  Section A addresses the arbitrator's authority, showing that the dispute is arbitrable and that the issues that the Arbitrator decided were presented to him.  In Section B, we explain that Host does not challenge one part of the Award: that Host violated the Collective Bargaining Agreement by not deducting dues from the wages of employees who authorized such deduction.  Section C focuses on the aspect of the Award that Host does challenge: that Host violated the Collective Bargaining Agreement by failing to provide other employees with the cards on which they could authorize deduction of dues from their wages.  This section shows first that the remedy the Arbitrator ordered for this violation – that Host pay damages to Local 11 – does not violate federal labor law or the California Labor Code.  It then shows that the violation that the Arbitrator found, the evidentiary burdens he applied and the remedy he awarded all draw their essence

---

[1] Host alleges that the Federal Arbitration Act, 9 U.S.C. §§ 9-11, also gives this Court jurisdiction.  The Ninth Circuit has refrained from deciding whether that is so, *IATSE Local 720 v. InSync Show Productions, Inc.*, 801 F.3d 1033, 1037 (9th Cir. 2015); *Matthews v. Nat'l Football League Mgmt. Council,* 688 F.3d 1107, 1115 & n.7 (9th Cir. 2012); and it is not necessary to resolve that question in this case.  Moreover, while federal courts acting under § 301 may "look[] to the FAA for guidance in labor arbitration case" on some issues, *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 41 n.9 (1987); they are not required do so.  *Goodall-Sanford, Inc. v. United Textile Workers Local 1802*, 353 U.S. 550, 551 (1957).

3

from the Collective Bargaining Agreement and are entitled to the Court's deference. Section D addresses the declarations that Host filed in support of its motion to vacate and explains why the Court should largely disregard them as an improper attempt to relitigate the facts.

## A. Local 11 and Host stipulated to give the Arbitrator unlimited authority to decide what issues he would address.

The parties' dispute was arbitrable in the most basic sense: they "agreed to submit all questions of contract interpretation to the arbitrator" and Local 11 "is making a claim which on its face is governed by the contract." *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567 (1960). The Collective Bargaining Agreement's grievance and arbitration provisions (Arts. 10 and 11) apply to disputes between Local 11 and Host over "interpretation, application or enforcement" of the Collective Bargaining Agreement. Petition, ¶ 6 & Exh. B, at 49 (§ 10.1); Answer & Counterclaim, ¶ 6. No provisions are excluded from this arbitration agreement. Thus, when Local 11 filed a grievance about Host's compliance with Article 2, Local 11 and Host then agreed to submit the grievance to arbitration before the Arbitrator. Petition, ¶ 14; Answer & Counterclaim, ¶¶ 14, 31; Martin Dec. ¶ 6.

In any effort to devise a legal issue for the Court to resolve, Host says that the Arbitrator did not have authority to decide the parties' evidentiary burdens and or award some aspects of the remedy. This argument has two main problems. First, in the labor context, an "arbitrator's interpretation of the scope of issues submitted to him is entitled to . . . deference." *Madison Industries*, 84 F.3d at 1190. Moreover, at the start of the hearing, Local 11 and Host stipulated that they would allow the Arbitrator to "frame the ultimate issues in the case" he would decide after briefs were submitted to him. Answer & Counterclaim, ¶ 33; Martin Dec., ¶ 8 & Exh. 1. The Arbitrator began the written award by listing the substantive issues[2] he would decide, even

---

[2] The parties also raised procedural issues which the Arbitrator addressed. Host does not challenge the Award's resolution of the procedural issues.

MEMORANDUM IN SUPPORT OF MOTION                    Case No.: 19-cv-1568

though he was not required to do so.  *Stead Motors*, 886 F.2d at 1206.  The issues, as he set listed them, were broad and general:

> 3. . . . . did the Employer violate the Collective Bargaining agreement in the manner it deducted Union initiation fees and monthly dues from employees' earnings for the period beginning on February 1, 2016?
>
> 4.  If so, what shall the appropriate remedy be?

Petition, ¶ 16 & Exh. A, at 11; Answer & Counterclaim, ¶ 16.  The Award addresses those issues and provides a remedy for the violations that the Arbitrator found. Petition, ¶ 16, at Exh. A, at 19-21; Counterclaim, ¶ 16.[3]

The issues that Host claims were not submitted to the Arbitrator fall comfortably within these two topics.  It was necessary for the Arbitrator to determine the parties' respective evidentiary burdens in order to decide whether the Employer violated the Collective Bargaining Agreement; and deciding whether the Employer has to pay damages to Local 11 without recouping that money from the employees whom Local 11 represents is part of the remedy.

Host cannot claim that it was surprised by the issues that the Arbitrator chose to address in the Award or the violations that he found.  Local 11 contended that Host violated Article 2 in two discrete ways:

- Host violated Section 2.10 by failing to deduct union dues and fees from the wages of some employees who had signed cards authorizing dues deduction; and
- It violated Section 2.7 by failing to give other employees the union membership cards, which would have enabled those employees to authorize Host to deduct their union dues and fees from their paychecks.

---

[3] In support of its argument that the Arbitrator lacked authority to decide various issues, Host cites *Communications Workers of Am. v. GTEL Corp.*, 1994 U.S. App. LEXIS 14679 (9th Cir. 1995) in violation of Ninth Circuit Rule 36-3, which prohibits citation to unpublished decisions issued prior to January 1, 2007 except in circumstances not applicable here.

Local 11 identified these two issues on the first day of hearing, Martin Dec., ¶ 8 & Exh. 1; and addressed both issues in its post-hearing brief. Answer & Counterclaim, ¶ 34 & Exh. C, at 14, 30-34; Martin Dec., ¶ 9 & Exh. 2, at 18, 34-38. Host understood that this was Local 11's position because it responded to both arguments in its post-hearing brief. Answer & Counterclaim, ¶ 34 & Exh. D, at 87-88; Martin Dec., ¶ 10 & Exh. 3 at 91-92. Both parties also addressed the burden of proof. Answer & Counterclaim, ¶ 34 & Exh. C, at 34-36, ¶ 35 & Exh. D, at 86; Martin Dec., ¶¶ 9-10 & Exh. 2, at 38-40, Exh. 3, at 90. Host never asserted that these issues were beyond the Arbitrator's authority.

**B.    The Section 2.10 violation: Host's failure to deduct dues as authorized.**

The Arbitrator decided that Host violated Section 2.10 by failing to deduct dues and fees from the wages of employees who signed the union cards: "[T]he Union has sustained its burden in proving that the Employer violated the CBA by failing to deduct dues for one or more employees who authorized payroll deduction. In so doing, the Employer violated its agreement pursuant to Article 2.10 to deduct those dues." Petition, ¶ 16 & Exh. A, at 19; Answer & Counterclaim, ¶ 16. Host does not challenge that aspect of the Arbitrator's decision or the remedy awarded by the Arbitrator for the Section 2.10 violation.

**C.    The Section 2.7 violation: Host's failure to provide employees with union cards.**

Host's entire challenge to the Award focuses on the Section 2.7 violation (Host failed to give some employees the union cards) and the remedy that the Arbitrator ordered (Host must pay Local 11 for the money that Local 11 lost as a result of Host's violation). Host says that this part of the Award is unlawful and violates the Collective Bargaining Agreement. In Section C.1, we show that the Award is consistent with each statute that Host identifies. In Section C.2, we explain why the award draws its essence from the Collective Bargaining Agreement, which is all that Courts may require of labor arbitration awards.

6

1   **1.     The Award is lawful.**

2       **a.     Section 302 of the Labor Management Relations Act.**

3       Section 302 of the Labor Management Relations Act, 29 U.S.C. § 186, is an

4   anti-bribery law.  Its main provisions prohibit employers from giving to unions, and

5   unions from receiving from employers, things of value.  29 U.S.C. § 186(a), (b).  But

6   the statute also creates exceptions to this general rule.  One exception (§ 302(c)(4))

7   legitimizes the dues deduction system to which the parties agreed in the Collective

8   Bargaining Agreement.  It allows employers to give union money deducted from

9   employees' wages pursuant to written authorizations.  29 U.S.C. § 186(c)(4).  Another

10  exception (§ 302(c)(2)) allows arbitrators to order employers to pay unions money

11  damages.  29 U.S.C. § 186(c)(2).  That exception permits an arbitrator to remedy an

12  employer's failure to comply with a dues deduction agreement by ordering the

13  employer to pay the union money that the union lost as a result of the employer's

14  breach.  The first exception means that Article 2's requirement that Host deduct union

15  dues and fees that employees have authorized is lawful.  The second means that the

16  Award's remedy for Host's violations of Article 2 is also lawful.

17      This is not a new issue for the courts.  Other arbitrators have required employers

18  to compensate unions for dues that the union did not receive as a result of the

19  employer's breach, and courts reviewing such awards have found that remedy to be

20  lawful.  *See Washington Post v. Washington-Baltimore Newspaper Guild,* 787 F.2d

21  604, 606-07 (D.C. Cir. 1986) (rejecting employer's argument that the award violated §

22  302); *Steelworkers v. United States Gypsum Co.,* 492 F.2d 713, 734 (5th Cir. 1971)

23  ("Since the purpose of § 302(a) is to protect employers from extortion and to insure

24  honest, uninfluenced representation of employees, and in view of the exclusion from

25  its coverage an arbitrator's award, we hold that § 302(a) does not render the arbitrator's

26  award here unenforceable.")[4]; *see also Humility of Mary Health Partners v. Teamsters*

27  _____

28  [4] Host misrepresents the Fifth Circuit's decision in *United States Gypsum Co*.
    According to Host, the Fifth Circuit held that an arbitration award requiring an

*Local 377,* 296 F.Supp.2d 840, 846 (N.D. Ohio 2003) (§ 302(c)(2) "affords an arbitrator with the power to issue an award requiring an employer to make monetary payments directly to the union for prior breaches of a valid checkoff dues provision"); *Monroe Lodge No. 770 v. Litton Business Systems, Inc.* 334 F.Supp. 310, 316 (W.D. Va. 1971) ("In light of this breach, the Union is entitled to reimbursement for dues which the Company failed to deduct and remit to the Union.")

In *Washington Post*, *supra*, the employer made the same argue that Host makes here. It argued that § 302's exceptions permit an award of money damages only when the employer fails to comply with dues deduction authorizations but not when employees have not given such authorization. The Court of Appeals rejected this argument, explaining that "[i]f any one of [§302(c)'s] exceptions applies, the general prohibition of § 302 does not operate." 787 F.2d at 606. The Court also reject that the award was inconsistent with § 302's purpose: "The Post will pay this money on the order of the arbitrator, after vigorous and genuine litigation. No reasonable view of these facts suggests any improper influence." *Id.* at 607. That is also true here.

An employer would violate § 302 if it deducted money from employees' wages without the employees' authorization and remitted that money to the union. That proposition is uncontroversial, and Host cites several decisions that support it.[5] But that is not what the Arbitrator said that Host should have done or what the Award requires Host to do. No one (not Local 11 and not the Arbitrator) asserted that Host

---

employer to pay a union amounts that the employer should have deducted from employees' wages is lawful only if the employees had authorized dues to be deducted. Host invented that limitation. It is not in the opinion. The Fifth Circuit did not address the issue whether an arbitrator may award damages stemming from the employer's failure to give employees union cards so that they could authorize dues deductions because that issue was not before the Court.

[5] Those cases are *Jackson Purchase Rural Elec. Coop. Assoc. v. Int'l Bhd. of Elec. Workers*, 646 F.2d 264, 266 (6th Cir. 1981) and *Associated Orchestra Leaders v. Philadelphia Musical Society, etc.*, 203 F.Supp. 755, 759 (E.D. Pa. 1962).

8

1   violated Article 2 by failing to deduct money from employees' wages that employees

2   had not authorized Host to deduct.  Host violated Article 2 by failing to give union

3   cards to employees so that they could authorize Host to deduct their union dues.

4   Moreover, the Award does not require Host to deduct money from employees' wages

5   that employees have not authorized Host to deduct.  It requires Host to pay that money

6   to Local 11 from its own funds.[6]

7            **b.   The Award does not violate the National Labor Relations Act**

8                 **or §§ 221 and 224 of the California Labor Code.**

9            Host also says that the Award violates the National Labor Relations Act's unfair

10  labor practice provisions and two sections of the California Labor Code that prohibit

11  employers from taking rebates of employees' wages.  These are just repackaged

12  versions of Host's argument about why the Award violates § 302.

13           Federal labor law makes it an unfair labor practice for an employer to deduct

14  union dues from employees' wages without the authorization required by § 302(c)(4),

15  as the cases that Host cites demonstrate.  Similarly, the California Labor Code limits

16  the deductions that an employer may make from employees' wages.[7]  But an employer

17  does not violate either law by paying a union out of its own pocket for money the

18  union lost as a result of the employer's omissions.  That is what the Award requires

19  here.  It requires Host to pay Local 11 with its own money – not employees' money –

20  for dues that Local 11 did not collect because Host failed to give employees union

21  ───────────────────

22  [6] Ironically, Host complains about the Award's prohibition on Host recouping from
    employees' wages the money it pays to Local 11 as damages.  Without employees'
23  authorization, that recoupment would be unlawful theft and conversion.

24  [7] To the extent that the California Labor Code is interpreted as prohibiting deductions
    from wages for union dues that employees authorize, it would be invalid.  Federal law
25  preempts state regulation of the deduction of union dues from employees' wages.
    *UFCW Local 99 v. Bennett*, 934 F.Supp.2d 1167, 1180-82 (D. Ariz. 2013);
26  *International Association of Machinists District Ten v. Allen*, 904 F.3d 490 (7th Cir.
27  2018); *Seapak v. National Maritime Union*, 300 F. Supp. 1197 (N.D. Ga. 1969), *aff'd*
28  423 F.2d 1229 (5th Cir. 1970), *aff'd* 400 U.S. 985 (1971).

                                              9

cards.  The Award does not require Host to make any unauthorized deductions from employees' wages.

There is an additional reason why the Court should reject Host's arguments about the National Labor Relations Act and the California Labor Code.  Host did not make these arguments to the Arbitrator.  They do not appear anywhere in Host's post-hearing brief.  *See* Answer & Counterclaim, ¶ 35 & Exh. D; Martin Dec. ¶ 10 & Exh. 3.  "Parties to arbitration proceedings cannot sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before the arbitrator."  *United Steelworkers of America v. Smoke-Craft*, 652 F.2d 1356, 1360 (9th Cir. 1981).

## 2.   The Award draws its essence from the Collective Bargaining Agreement.

### a.   The Arbitrator interpreted Article 2.

Federal courts' review of labor arbitration awards for compliance with a collective bargaining agreement is limited to ensuring that the award "draws its essence" from that agreement.  *Enterprise Wheel & Car Corp.*, 363 U.S. at 597.  This is an extremely deferential standard that does not allow the Court to review the arbitrator's interpretation or application of a collective-bargaining agreement.  It "means only that the arbitrator's determination must be a 'plausible interpretation' of the CBA.  The arbitrator's decision need not be the only possible interpretation." *Association of Western Pulp & Paper Workers v. Rexam Graphic, Inc.*, 221 F.3d 1085, 1090-91 (9th Cir. 2000) (internal citations and quotation marks omitted).  "[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator.  It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Enterprise Wheel & Car Corp.*, 363 U.S. at 599.  "[I]f an arbitrator is even arguably construing or apply the contract and acting within the scope of his authority, the fact

that a court is convinced he committed serious error does not suffice to overturn the decision." *Major League Baseball Players Assn. v. Garvey*, 532 U.S. 504, 509 (2001) (internal citations and quotation marks omitted). The Court's sole "task is to determine whether the arbitrator interpreted the collective bargaining agreement, *not* whether he did so correctly." *Hawaii Teamsters & Allied Workers Union, Local 996 v. United Parcel Svc.*, 241 F.3d 1177, 1178 (9th Cir. 2001). "[T]he fact that an arbitrator arguably misinterpreted a contract, does not mean that his did not engage in the act of interpreting it." *Id.* at 1183. "So far as the arbitrator's decision *concerns* construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Id.* (quoting *Enterprise Wheel & Car Corp.*, 363 U.S. at 599).

It is easy to demonstrate that the Award draws its essence from Article 2. The Award requires Host to compensate Local 11 for the dues and fees of certain employees who did not sign dues deduction cards. The logic underlying this remedy, and its relation to the Collective Bargaining Agreement, is straightforward. Section 2.7 requires Host to give union cards to employees. Those cards serve a dual function: they enable employees to become union members, and they also authorize Host to deduct union dues and fees from their wages. If Host did not give the cards to employees, employees could not authorize dues deduction. As a result, Local 11 did not receive dues that it would have received if Host had given the cards to employees as Section 2.7 requires.

Host's disagreement with the Arbitrator's conclusion is irrelevant. The Arbitrator interpreted Article 2.

> **b.   The Collective Bargaining Agreement does not specify which party bears the burden of proof so it was the Arbitrator's job to decide.**

The Arbitrator addressed the scant evidence about whether Host provided dues cards to employees by adopting a presumption:

MEMORANDUM IN SUPPORT OF MOTION                              Case No.: 19-cv-1568

Given the Employer's breach, it cannot now avoid a remedy simply by claiming the absence of a dues card.  If a dispute over the existence of any authorization arises with respect to any former CMS employee or other employee because of the lack of a dues check-off card, the employee will be presumed to have signed the dues check-off card unless the Employer can demonstrate either that it presented the employee with a dues card and the employee refused to authorize dues check-off or that, in the case of a former CMS employee, never authorized dues check-off while employed by CMS.

The remedy and presumption described is distinguishable from the Employer's obligation to make dues deductions moving forward, since the Employer is prohibited from automatically deducting dues in the absence of employee authorization.  Thus, this presumption applies solely for the purposes of calculating the remedy to the Union in this case.

Petition, ¶ 16 & Exh. A, at 20-21; Answer & Counterclaim, ¶ 16.  Host complains that by adopting this presumption, the Arbitrator effectively gave it, and not Local 11, the burden of proving that Host complied with Section 2.7.  This is not a basis for vacating the Award.

The Collective Bargaining Agreement does not say which party bears the burden of proof in an arbitration proceeding.  The parties briefed this issue.  Host asserted that it has a practice of providing union cards to all newly-hired employees, and argued in its post-hearing brief that Local 11 should bear the burden of proving that it did not do so.  Answer & Counterclaim, ¶ 35 & Exh. D, at 86; Martin Dec., ¶ 10 & Exh. 3, at 90. Local 11 took the opposite position.  It explained that there was incomplete evidence about whether Host provided union cards to the employees at issue but that it was reasonable to infer from the evidence, including that the overwhelming majority of employees authorize dues deduction when given the opportunity, that Host had not provided the union cards to employees.  Local 11 then urged the Arbitrator to follow other arbitrators' decisions and shift the burden to Host because Host had better access

12

1   to the evidence about what it did (or did not do).  Answer & Counterclaim, ¶ 34 & Exh.

2   C, at 34-36; Martin Dec., ¶ 9 & Exh. 2, at 38-40.

3          The presumption that the Arbitrator adopted suggests that he was persuaded by

4   Local 11's arguments.  The presumption does not disregard or modify the Collective

5   Bargaining Agreement.  Local 11 and Host did not specify in the Agreement which of

6   them would bear the evidentiary burden in the event of a dispute, so the "arbitrator

7   ha[d] authority to decide what the parties would have agreed on had they foreseen the

8   particular item in dispute." *Desert Palace, Inc. v. Local Joint Executive Board of Las*

9   *Vegas*, 679 F.2d 789, 793 (9th Cir. 1982).  That is the classic function of a labor

10  arbitrator:

> Unlike the commercial contract, which is designed to be a comprehensive
> distillation of the parties' bargain, the collective bargaining agreement is a
> skeletal, interstitial document.  The labor arbitrator is the person the parties
> designate to fill in the gaps; for the vast array of circumstances they have not
> considered or reduced to writing, the arbitrator will state the parties' bargain.

16  *Stead Motors*, 886 F.2d at 1205 (internal citations and quotation marks omitted).  "In

17  such cases, judicial review is limited to whether the arbitrator's solution can be

18  rationally derived from some plausible theory of the general framework or intent of the

19  agreement." *Desert Palace*, 679 F.2d at 793.

20          **c.    The Arbitrator had discretion to remedy the violation he found**
21          **by prohibiting Host from recouping money from employees.**

22          Host complains repeatedly about this part of the Award but Host does not offer

23  any argument other than Host's dislike of it.

24          The Arbitrator had authority to craft a remedy responsive to the violations he

25  found.  Host and Local 11 agreed that the Arbitrator could define the issues, and "the

26  appropriate remedy" was one of the issues that the Arbitrator identified.  Petition, ¶ 16

27  & Exh. A, at 11; Answer & Counterclaim, ¶¶ 16, 33; Martin Dec., ¶ 8.  Just as courts

28  defer to labor arbitrators' interpretation of the issues before them and the labor

contract, courts also defer to labor arbitrators' judgment about how to remedy the violations they find: "[W]hen it comes to formulating remedies" labor arbitrators "need [] flexibility in meeting a wide variety of situations." *Enterprise Wheel & Car Corp.*, 363 U.S. at 597; *see also Rexam Graphic*, 221 F.3d at 1090 (labor arbitrators have broad discretion "to craft common sense remedies responsive to all the circumstances surrounding the case presented to them"). It is possible that the Arbitrator decided to prohibit recoupment from employees because Local 11 made the following argument:

> It is not employees' fault that Host failed to deduct their dues. Host either failed to give them dues cards to sign or disregarded the dues card that they did sign. A wealthy person might view a delay in collection as a financial boon. But Host's employees are not highly paid. *See* Jt. Ex. 1, at 6 (wage scale). Many live hand-to-mouth and don't have large savings accounts. They spend their paychecks when they receive them, so paying dues each month by dues deduction is easier than paying months of arrears. Tr.(II) 238-39.

Answer & Counterclaim, ¶ 34 & Exh. C, at 37; Martin Dec., ¶ 9 & Exh. 2, at 41. It is also possible that the Arbitrator adopted this part of the remedy from the Fifth Circuit's decision in *United States Gypsum Co.,* which was cited to him. *See* 492 F.2d at 734 (rejecting argument that "arbitrator's decision requiring the company to pay the award without recoupment from its employees is not within his remedial authority"). But regardless of why the Arbitrator decided to prohibit Host from recouping money from employees, it is precisely the type of common-sense remedy that arbitrators have authority to award.

**D.   Host may not relitigate the facts underlying the Arbitrator's Award in this Court.**

With its motion to vacate the Award, Host filed declarations from two Host managers (John Sutherland and Angelina Preston) about Host's practices with respect to union dues and also a declaration from Host's counsel Lawrence Stone based in part

14

on his "review of and familiarity with Petitioner's [i.e., Host's] files."  Apparently, Host hopes to persuade the Court to accept the facts presented in those declarations instead of the facts found by the Arbitrator.

These declarations are largely irrelevant and should be disregarded or stricken because courts do not review labor arbitrators' factual findings.  *Stead Motors*, 886 F.2d at 1207; *see also El Dorado Tech. SVC., Inc. v. Union General de Trabajadores de Puerto Rico*, 961 F.2d 317, 320 (1st Cir. 1992) (rejecting claim of erroneous fact-finding as "thinly disguised attempt to retry the arbitration case in a judicial forum").  Even fact-finding that constitutes "grievous error" or that is "improvident, even silly," *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 39 (1987); or that is "at worst 'irrational' and at best 'bizarre,'" *Major League Baseball Players*, 532 U.S. at 510: is not "a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts."  *Misco*, 484 U.S. at 39.

Accordingly, the declarations of John Sutherland and Angelina Preston [ECF Doc. No. 9-1, 9-2 & 9-3] should be disregarded or stricken in full.  All of Paragraph 4, except the first sentence, of Lawrence Stone's declaration [ECF Doc. No. 9-4] should also be disregarded or stricken.

## Conclusion

For all of the foregoing reasons, Host's motion to vacate the arbitration award should be denied, and Local 11's motion to confirm the arbitration award should be granted.

///
///
///
///
///
///
///

MEMORANDUM IN SUPPORT OF MOTION                    Case No.: 19-cv-1568

Dated:  March 25, 2019          Respectfully submitted,


Kristin L. Martin, SBN 206528
Kimberley C. Weber, SBN 302894
McCRACKEN, STEMERMAN & HOLSBERRY,
LLP
595 Market Street, Suite 800
San Francisco, CA 94105
Telephone: 415-597-7200
Fax: 415-597-7201
E-mail: klm@msh.law
         kweber@msh.law

*Attorneys for UNITE HERE Local 11*

MEMORANDUM IN SUPPORT OF MOTION          Case No.: 19-cv-1568

## PROOF OF SERVICE
## STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO

I am employed in the city and county of San Francisco, State of California.  I am over the age of eighteen years and not a party to the within action; my business address is: 595 Market Street, Suite 800, San Francisco, California 94105.

On March 25, 2019 I served a copy of the following document(s) described as:

**RESPONDENT-COUNTERCLAIMANT UNITE HERE LOCAL 11'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD AND IN OPPOSITION TO PETITIONER HOST INTERNATIONAL, INC.'S MOTION TO VACATE**

on the interested party(ies) to this action as follows:

**_By ECF System - Court's Notice of Electronic Filing:_**

> Steven M Zimmerman
> Lawrence H Stone
> Jackson Lewis LLP
> 725 South Figueroa Street Suite 2500
> Los Angeles, CA 90017-5408
> 213-689-0404
> Fax: 213-689-0430
> Email: steve.zimmerman@jacksonlewis.com
>         stonel@jacksonlewis.com

> _Attorneys for Host International, Inc._

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 25th day of March, 2019 at San Francisco, California.

_____
Katherine Maddux

1