Kristin L. Martin, SBN 206528
Kimberley C. Weber, SBN 302894
McCRACKEN, STEMERMAN & HOLSBERRY, LLP
595 Market Street, Suite 800
San Francisco, CA 94105
Telephone: 415-597-7200
Fax: 415-597-7201
E-mail: klm@msh.law
        kweber@msh.law

*Attorneys for UNITE HERE Local 11*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOST INTERNATIONAL, INC., <br><br> Petitioner, <br> vs. <br><br> UNITE HERE Local 11, <br><br> Respondent. | Case No.: 19-cv-1568 <br><br> **UNITE HERE LOCAL 11'S REPLY IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD** |
| UNITE HERE Local 11, <br><br> Counterclaimant, <br> vs. <br><br> HOST INTERNATIONAL, INC., <br><br> Counterdefendant. | |

Host has not offered any valid reason to deny confirmation of the Award and has abandoned some of the arguments it made in its motion to vacate. Host no longer challenges the Award by claiming that it violates the California Labor Code or because the remedy prohibits Host from recouping its damages from employees. Host also does not challenge the part of the Award that requires Host to compensate Local 11 for dues that it failed to deduct even though employees authorized it to do so. Instead, Host retreats to a single theory: that the award is unlawful because it requires Host to pay damages to Local 11 that represent dues that employees did not authorize Host to deduct. Host repeats like a mantra that Host could not lawfully deduct dues without the employees' authorization, but Host ignores the reason why the Arbitrator found fault with Host's conduct and awarded Local 11 damages. The Arbitrator faulted Host, not because Host refrained from deducting dues that employees did not authorize, but because Host failed to present employees with union cards so that they could authorize dues deduction.

For clarity, we respond to the arguments Host made in its opposition brief in the order that Host made them.[1]

### A. There is no LMRA § 302 violation.

Host says that the exception in § 302 of the Labor Management Relations Act, 29 U.S.C. § 186, for payment of money in satisfaction of an arbitrator's award (§ 302(c)(2)), does not apply unless employees have authorized dues deduction in accordance with a different exception (§ 302(c)(4)). Host is wrong because the two exceptions operate independently.

---

[1] The hearing in this case is set for April 23, 2019. Opposition briefs are due twenty-one days before hearing date, and reply briefs are due fourteen days before the hearing date. *See* Local Rules 7-9 & 7-10. Host failed to file an opposition to Local 11's motion to confirm by April 2. After the undersigned raised this failure with Host's counsel, the parties filed a stipulation to extend the time. *See* ECF Doc. Nos. 20, 23.

Section 302's structure makes this clear. Section 302(a) and (b) create a general prohibition on payment of money by an employer to a union. *See* 29 U.S.C. § 186(a), (b). Section 302(c) establishes nine exceptions to this prohibition. Two of the exceptions are relevant to this case. One exception allows a union and an employer to agree that the employer will deduct union dues from employees' wages if the employees authorize such deduction in writing. *See* 29 U.S.C. § 186(c)(4). That exception makes the agreement that Local 11 and Host made in §§ 2.7 and 2.10 of the Collective Bargaining Agreement lawful: Host promised to present employees with union cards, remit copies of the signed cards to Local 11 and deduct union dues if employees authorized deduction. The other exception permits an employer to pay money to a union to satisfy an arbitrator's award. *See* 29 U.S.C. § 186(c)(2). An arbitrator might award a union damages because the employer failed to deduct union dues that employees authorized.[2] Section 302(c)(4), together with § 302(c)(2), would legitimize that award. But § 302(c)(2) also allows an arbitrator to award damages for other reasons. In fact, it does not place any limits on the reasons why an arbitrator might award damages. Thus, § 302(c)(2) removes the award of damages to Local 11 from § 302(a)'s general prohibition, regardless of whether employees authorized Host to deduct dues.

This is not a new proposition. In *Washington Post v. Washington-Baltimore Newspaper Guild,* 787 F.2d 604 (D.C. Cir. 1986), the D.C. Circuit rejected exactly the same argument that Host makes to this Court:

> The starting point for all questions of statutory interpretation is, of course, the plain language of the provisions at issue. Section 302 of the LMRA generally forbids an employer from contributing money to a labor organization. However, § 302 provides some limited exceptions to that general prohibition. One exception, § 302(c)(4), permits the "checkoff" of

---

[2] As explained in Local 11's opening brief, the Arbitrator also concluded that Host did not deduct dues from the wages of employees who had authorized such deduction. Host does not challenge that aspect of the award.

> union dues from an employee's salary. Another exception, § 302(c)(2), allows for payments in satisfaction of an arbitrator's award.
>
> Our problem lies in the intersection between these two exceptions. The Post contends that the effect of permitting the arbitrator to order the employer to pay the employees' union dues is to nullify § 302(c)(4), which permits the payment of dues only when employees have given written authorizations. On this view, the award was impermissible, since the employees had specifically revoked their authorizations for the payment of dues.
>
> On another view of the problem, however, no conflict appears. In drafting § 302, Congress established nine alternative exceptions. If any one of these exceptions applies, the general prohibition of § 302 does not operate. Although § 302(c)(4) would not permit the payment of union dues, § 302(c)(2) would, and thus the payment is lawful. This interpretation is to be preferred as it avoids a conflict in statutory provisions.

*Id.* at 606-07; *see also Humility of Mary Health Partners v. Teamsters Local 377,* 296 F.Supp.2d 840, 846 (N.D. Ohio 2003) ("This Court further joins the majority of cases that interpret Section 186(c)(2) and 186(c)(4) exceptions as separate and distinct.").

The decision in *Washington Post* is on all fours with this case. In that case (as might be the case here), employees had not authorized dues deduction, and the employers were responsible for the lack of authorization. The D.C. Circuit noted these facts at the outset of its decision: employees "revoked their authorization for the payment of union dues from their salaries and refused to pay further dues"[3] because the employer told them that they were excluded from the bargaining unit. *Id.* at 605. In this case, the employer likely did not give employees union cards which would have enabled them to authorization deduction. In both cases, the employers' wrongdoing

---

[3] Host says that the revocations were "allegedly" revoked, but that misrepresents the facts. Nowhere in the *Washington Post* decision does the Court ever say that revocation may not have occurred. In fact, the employer's argument (which the D.C. Circuit rejected but Host repeats) – that § 302(c)(2) would permit the arbitration award only if employees had authorized dues deduction – is premised on the fact that employees had not authorized dues deduction.

caused the respective unions to lose dues money, and the arbitration awards compensate the unions for dues money that the employees had not, or may not have, authorized the employer to deduct. Just as § 302(c)(2) permitted the award in *Washington Post*, it also allows the Award at issue in this case.

Host copies other arguments that the D.C. Circuit rejected in *Washington Post*. Host characterizes *Jackson Purchase Rural Elec. Coop. Assoc. v. Int'l Bhd. of Elec. Workers*, 646 F.2d 264 (6th Cir. 1981) as "the most closely analogous case" and also cites *International Longshoremen's Assn. v. Seatrain Lines, Inc.*, 326 F.2d 916 (2d Cir. 1964). Host must be hoping that the Court does not read the cases it cites because the D.C. Circuit gave a detailed explanation in *Washington Post* for why it rejected the employer's reliance on those cases. *Id.* at 608-609.

Both cases – *Jackson Purchase* and *Seatrain* -- involved contracts not sanctioned by § 302(c)'s exceptions in which the employers agreed to pay money to the respective unions. In *Jackson Purchase*, the employer had for years deducted union dues from employees' wages without authorization, and the union sought to compel the employer to continue this illegal practice. 646 F.2d at 266. In *Seatrain*, the union sought to enforce a contract provision requiring the employer to pay money to it in exchange for the union's assent to the elimination of work through automation, and justified this blatantly illegal arrangement by characterizing it as a "settlement of a disputed claim" covered by the § 302(c)(2) exception. The Second Circuit rejected that characterization because "every payment by an employer to a union could be characterized as a settlement of a claim or demand made by the union."[4]  326 F.2d at

---

[4] Similarly, a court might decide that the § 302(c)(2) exception does not sanction an arbitration award that is the product of collusion, but that is not what occurred here. Local 11 and Host have a real dispute about whether Host violated its obligations under Article 2 of the Collective Bargaining Agreement. They held five days of hearing before a neutral arbitrator and then filed post-hearing briefs. Answer & Counterclaim, ¶ 32; Martin Dec., ¶ 7. The Arbitrator's Award was the product of that adversarial process.

4

920.  But the Second Circuit also refrained from "attempt[ing] to define in detail the area in which Section 302(c)(2) affords immunity."  *Id.*

Whereas the contracts in *Jackson Purchase* and *Seatrain* on their face violated § 302, Local 11's Collective Bargaining Agreement with Host does not.  Host does not dispute the facial validity of the Collective Bargaining Agreement provision (§ 2.7) requiring it to give union cards to employees.  It cannot do so because the National Labor Relations Act, 29 U.S.C. § 151 *et seq*, permits such an arrangement.  *General Instrument Corp.*, 262 NLRB 1178, 1184-1185 (1982) (absent any specific threats or intimidating conduct, an employer may distribute membership and dues authorization cards to new employees); *Colin Service Systems*, 226 NLRB 70, 71 (1976) (same).  Host's only complaint is that the Arbitrator gave Local 11 a remedy for Host's breach of that contract provision.

### B. The Award does not change Host's duties under the Collective Bargaining Agreement.

Host concedes that the Arbitrator had authority to decide that Host had the burden of proving that it complied with Collective Bargaining Agreement § 2.7's requirement that it present union cards to employees and remit the signed cards to Local 11.  ECF Doc. 21, at 7:4-7.  Instead, Host complains that the Award alters the Collective Bargaining Agreement by requiring it to keep a list of employees to whom it presents union cards but who decline to sign the cards.  There are two problems with Host's argument.

First, Host misrepresents the Award.  The Arbitrator did not decide that the Collective Bargaining Agreement requires Host to keep a list of employees who decline to sign union cards.  The Award does not order Host to do so in the future.  Rather, the Arbitrator decided that, *for the purpose of the remedy*, he would presume that the employee "signed the dues check-off unless the Employer can demonstrate either that it presented the employee with a dues card and the employee refused to authorize dues check-off or that, in the case of a former CMS employee, never

5

authorized dues check-off while employed at CMS." Complaint, Exh. A, at 25-26 [ECF Doc. No. 1]. The Award then makes clear that this presumption is solely for the purpose of calculating damages:

> The remedy and presumption described is distinguishable from the Employer's obligation to make dues deductions moving forward, since the Employer is prohibited from automatically deducting dues in the absence of employee authorization. Thus, this presumption applies solely for the purpose of calculating the remedy to the Union in this case.

*Id.* at 26.

Second, this presumption draws its essence from the Collective Bargaining Agreement. It makes sense in the context of this case. Host failed to present evidence that it met its obligation under § 2.7 of the Collective Bargaining Agreement to present employees with union cards and remit copies of all the signed cards to Local 11. Instead, Host took the position that it was Local 11's burden to prove what occurred at employee orientation meetings at which Local 11's representatives were not present. Answer & Counterclaim, ¶ 35 & Exh. D, at 86-88 [ECF Doc. No. 12]; Martin Dec., ¶ 10 & Exh. 3, at 90-92 [ECF Doc. No. 16-2]. Host's approach to this case amounted to an evasive "you can't catch me" defense. That approach failed. In response, Local 11 explained what Host could have done differently when Local 11 alerted it to the problem:

> It would have been easy for Host to determine what went wrong. Carolina Simmons first asked about dues deductions from the former CMS employees' wages in October 2016, which was just a few months after Host hired those employees and held orientation sessions for them. Un. Ex. 14. At that time, Host could have checked its computer system to determine if dues deduction forms had been entered for those employees and if not, asked the Human Resources staff whether they presented the employees with dues cards and assisted in completion of those cards. If Host's staff failed to do so, Host could have then held a meeting for those employees to present the dues cards. If Host's staff responded that they had presented the cards, Host could have followed up by asking whether employees chose to complete dues cards and if so, what was done with the completed dues cards. Host's practice is to store a paper copy of each

6

> dues card in employees' personnel files and also enter the dues-deduction authorization into its computer system (PeopleSoft). Host could have generated a list of all employees for whom PeopleSoft reflected that dues deduction had not been authorized. Host then could have checked the personnel files for hard copies and if it did not find the cards in those locations, asked responsible Human Resources staff why not. Host failed to take any of these simple steps or call as witnesses any of the Human Resources staff who ran the orientations or were responsible for processing the dues cards after those orientations.

Answer & Counterclaim, ¶ 34 & Exh. C, at 35-36; Martin Dec., ¶ 9 & Exh. 2, at 39-40. Local 11 also pointed out evidence that supported the conclusion that if Host had presented employees with union cards, the employees likely would have signed the cards:

> [I]t would be unusual if large numbers of the former CMS employees had declined to sign dues cards. Employees are not required to authorize dues deduction, but the overwhelming majority do so even without Local 11's representatives speaking to employees at orientation sessions. Tr.(I) 168; Tr.(II) 95-96, 112-13, 119-20; Jt. Ex. 6, at ¶ 1. Tr.(I) 82; Tr.(II) 146-48. Host's Senior Director of Labor Relations knows of just three Host employees anywhere in the country who chose not to authorize dues deduction, and they were in Charlotte, Phoenix and Boston. Tr.(III) 57-58. No one from Host has ever told Local 11 that more than a few employees did not want to sign dues cards. Tr.(I) 82. This is to be expected. Dues payment is a condition of employment, and payment through automatic deduction is far more convenient than bringing cash to the union office or sending a check each month. Tr.(II) 235-36.
>
> When Host complies with its obligations under Article 2.7, Local 11 receives dues through wage deductions from most or all employees. It is reasonable to infer that Host did not present the dues cards to the former CMS employees.

Answer & Counterclaim, ¶ 34 & Exh. C, at 33-34; Martin Dec., ¶ 9 & Exh. 2, at 37-38. Based on this evidence, the Arbitrator could have adopted the presumption that Local 11 advocated. Instead, he gave Host one last chance, in the context of damage

7

REPLY IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD             Case No.: 19-cv-1568

calculations, to prove that it did in fact present union cards to employees who declined to sign the cards. If Host had presented employees with the union cards, Host would not be complaining.

The Arbitrator did exactly what arbitrators are supposed to do when interpreting a labor contract.[5] He did not add new substantive terms to the Collective Bargaining Agreement, but instead "craft[ed] [a] common sense remed[y] responsive to all the circumstances surrounding the case presented to [him]." *Association of Western Pulp & Paper Workers v. Rexam Graphic, Inc.*, 221 F.3d 1085, 1090 (9th Cir. 2000). This approach has the Supreme Court's endorsement: "[W]hen it comes to formulating remedies" labor arbitrators "need [] flexibility in meeting a wide variety of situations." *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

C.   **The Award is consistent with the parties' stipulation.**

Host points out that the parties stipulated that Host "may not deduct dues without a signed authorization form from an employee." The Award is consistent with that stipulation. Nowhere in the award did the Arbitrator state that Host should have deducted dues from the wages of employees who had not authorized such deduction. Local 11 did not advocate for such an award. *See* Martin Dec. ¶ 9, Exh. 2; *see also* Answer & Counterclaim, ¶ 34 & Exh. C. The Arbitrator ordered Host to pay Local 11 for dues that Host could not have deducted because Host never gave employees the opportunity to authorize such deduction. Host failed to present employees with the cards on which they could have authorized such deduction. The remedy compensates Local 11 for the consequence of Host's failure (i.e., that Host could not lawfully deduct such dues).

---

[5] Local 11's explained in its opening brief that in labor arbitration cases, § 301 of the Labor Management Relations Act, and not the Federal Arbitration Act, applies. Host mostly ignores § 301 case law and instead relies on cases involving commercial arbitration.

8

### D. The Award does not violate the NLRA.

The violations that Host conjures up of § 302 of the Labor Management Relations Act, 29 U.S.C. §186, and § 8 of the National Labor Relations Act, 29 U.S.C. § 158, do overlap.  Section 302 makes it unlawful for an employer to remit to a union dues deducted from employees' wages without an authorization.  The National Labor Relations Board has interpreted § 8 as prohibiting employers from deducting dues, and unions from causing employers to do so, when there is not a valid deduction authorization in effect.  In making this determination, the Board looks to § 302 to determine whether the deduction authorization is valid.  *Electrical Workers Local 2088 (Lockheed Space Operations)*, 302 NLRB 322, 325 n.8 (1991).  In other words, unauthorized deduction of union dues violates § 8 when it violates § 302.  The converse is also true: authorized deduction of union dues does not violate § 8 and it does not violate § 302.  In this sense, Host's NLRA-violation argument does repackage Host's § 302-violation argument.

There is a more fundamental reason why the Award does not violate the NLRA.  As explained in Local 11's opening brief and above, the Award does not fault Host for failing to deduct dues from the wages of employees who failed to authorize deduction.  The Award faults Host for failing to present union cards to employees, as Host promised in § 2.7 of the Collective Bargaining Agreement.  This contract provision is lawful.  *General Instrument Corp.*, 262 NLRB at 1184-1185; *Colin Service Systems*, 226 NLRB at 71.  The Award simply gives Local 11 a remedy for this Host's violation of this contractual obligation.[6]

---

[6] The sole NLRB case that Host cites – *Chung King Sales, Inc.*, 126 NLRB 851 (1960) – does not support Host's claim that the Award violates the NLRA.  That case involved a very different legal issue than the one here: whether the collective bargaining agreement required employees to pay union dues earlier than § 8(a)(3) of the NLRA permits.  *Id.* at 852-53.  *Cf.* 29 U.S.C. 158(a)(3) (permitting an agreement that requires union membership "on or after the thirtieth day following the beginning of such employment or the effective date of the agreement, whichever is later").  Moreover, the

9

### E. Host admits that the Court may not review the Arbitrator's factual conclusions.

Host defends the fact declarations it filed by describing them as giving the Court "context of the circumstances giving rise to the arbitration." Regardless of what that phrase means, the only facts that matter at this stage are the facts that the Arbitrator found. *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 39 (1987); *Stead Motors v. Automotive Machinists Lodge*, 886 F.2d 1200, 1207 (9th Cir. 1989) (en banc). Facts about the "context of the circumstances giving rise to the arbitration" are irrelevant. The Court should disregard or strike Host's declarations.

### Conclusion

For all of the foregoing reasons, the Arbitrator's Award should be confirmed.

Respectfully Submitted,

*[signature]*

Kristin L. Martin, SBN 206528
Kimberley C. Weber, SBN 302894
McCRACKEN, STEMERMAN & HOLSBERRY, LLP
595 Market Street, Suite 800
San Francisco, CA 94105
Telephone: 415-597-7200
Fax: 415-597-7201
E-mail: klm@msh.law
        kweber@msh.law

*Attorneys for UNITE HERE Local 11*

Dated this 16th day of April, 2019 in San Francisco, CA.

---

*Chung King* Board's interpretation of § 8(a)(3) has since been overruled. *See New York State Elec. & Gas Corp.*, 135 NLRB 357, 361 (1962).

# PROOF OF SERVICE
## STATE OF CALIFORNIA, CITY AND COUNTY OF SAN FRANCISCO

I am employed in the city and county of San Francisco, State of California. I am over the age of eighteen years and not a party to the within action; my business address is: 595 Market Street, Suite 800, San Francisco, California 94105.

On April 16, 2019 I served a copy of the following document(s) described as:

UNITE HERE LOCAL 11'S REPLY IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD

on the interested party(ies) to this action as follows:

***By ECF System - Court's Notice of Electronic Filing:***

Steven M Zimmerman
Lawrence H Stone
Jackson Lewis LLP
725 South Figueroa Street Suite 2500
Los Angeles, CA 90017-5408
213-689-0404
Fax: 213-689-0430
Email: steve.zimmerman@jacksonlewis.com
stonel@jacksonlewis.com

*Attorneys for Host International, Inc.*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on this 16th day of April, 2019 at San Francisco, California.

_____
Katherine Maddux